**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 1:22-CR-414 (JEB)** |
| | **:** | |
| **Andrew Johnson,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' OMNIBUS MOTION IN LIMINE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this omnibus brief arguing motions *in limine*, pursuant to Fed. R. Evid. 401, 403, and 611(b), to preclude the defendant from introducing evidence or making arguments:

a. On security Related Topics:

    i. On the specific location of security cameras in the U.S. Capitol;

    ii. On specific Secret Service tactics and emergency operations;

b. That his conduct was authorized by or in response to:

    i. The former President Trump or other officers or officials;

    ii. Law enforcement;

    iii. Agent provocateurs;

c. That the First Amendment permitted his conduct;

d. Encouraging jury nullification;

e. On his prior good acts;

f. On his culpability relative to other actors on January 6, 2021; and/or

g. Referring to his own out-of-court statements that constitute inadmissible hearsay.

I.    LEGAL BACKGROUND

Motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). The government presents the above eight issues to the Court to prepare this case for an efficient trial.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States,* 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri,* 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which the agent did not testify on direct examination and that did not pertain to the charges in the case), *overruled on other grounds* by *Fowler v. Butts,* 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

While limiting the defendant's opportunity for cross-examination may implicate the constitutional right to confront witnesses, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever

way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until a defendant sufficiently establishes that defense through affirmative evidence presented during his or her own case-in-chief. *See United States v. Lin,* 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol,* 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp,* 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with respect to matters only related to an affirmative defense and not elicited through direct examination).

Preventing the defendant from exploring the topics identified by the government will not infringe his Confrontation Clause rights because, as explained below, such topics have little probative value and the defendant has more direct ways of making his case.

## II.   ARGUMENT

### a.   Motion in Limine to Limit Testimony on the Location of Surveillance Cameras

The Court should restrict the defendant from presenting evidence or seeking to elicit testimony regarding the specific position of U.S. Capitol Police ("USCP") surveillance cameras. To meet its burden of proof at trial, the government will present video evidence from a variety of sources, including USCP surveillance footage. The USCP maintain an extensive closed-circuit video system that includes cameras inside the Capitol building, inside other buildings within the Capitol complex, and outside on Capitol grounds. These cameras captured thousands of hours of

footage from the breach of the Capitol and have been instrumental in documenting the events of January 6, 2021.

The USCP surveillance system, however, also serves an important, and ongoing, function in protecting Congress and, by extension, national security. In particular, the footage from the system is subject to limitations and controls on access and dissemination. To find relevant footage from the USCP's surveillance system and adequately prepare for trial, one would need to use maps that display the locations of the interior and exterior cameras. The government has therefore provided the defense with maps that display these locations. However, due to the sensitive nature of these items, the government seeks an order limiting the defense from probing, during cross-examination, the exact locations of USCP surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial.[1] This would be consistent with this Court's prior orders. *See* Memorandum Opinion at 3, ECF No. 53, *United States v. Easterday*, No. 22-cr-404 (D.D.C. Oct. 12, 2023) (J. Boasberg) ("The Court will accordingly preclude the defense from questioning witnesses about the precise location of Capitol Police cameras but will allow *in camera* proceedings should Easterday establish during trial that presentation of such locations is necessary.").

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded in light of the ongoing security needs of the Capitol. The defense can probe what USCP cameras *show*, and what they do not show, by asking about the general location of each camera. For example, a camera positioned inside the Lower West Terrace tunnel can be

---

[1] These maps have been disclosed to the defendants but, pursuant to the terms of the protective order, have been designated "Highly Sensitive." Moreover, these maps have been designated as "Security Information" under 2 U.S.C. §1979, which forbids their use without the approval of the Capitol Police Board.

described as "inside the tunnel, facing out" without describing its exact height and depth within the tunnel and without showing a picture of the camera. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all USCP cameras would risk compromising these security concerns for no additional probative value: the map contains numerous cameras installed in parts of the Capitol that the defendant did not visit.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger to national security. *See United States v. Mohammed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial and can result in undue prejudice that substantially outweighs any probative value). If the map of the Capitol cameras is introduced in this trial, or in any trial, it becomes available to the public. Immediately, anyone could learn about the Capitol Police's camera coverage as of January 6, 2021, and—importantly—could learn about the parts of the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.*

### b.  Motion in Limine to Limit Examination Regarding Secret Service Protocols

The Court should limit the defendant's cross-examination of any United States Secret Service ("Secret Service") witnesses on their specific tactics and emergency operations. To meet its burden of proof at trial for Counts One and Two, the government will call a witness from the Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom

were present at the Capitol.  This official will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.

However, the nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to the Secret Service's ability to protect high-ranking members of the Executive branch and, by extension, national security. Specifically, cross-examination should not be permitted to extend to (1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees. These topics have no relevance to any issue at controversy, and even if they did, any relevance would be substantially outweighed by the danger of prejudicing the United States' legitimate interest in the safety of senior government officials.  *See* Fed. R. Evid. 403.

Cross-examination of Secret Service witnesses about these extraneous matters, which will be beyond the scope of direct examination, should be excluded as irrelevant or unduly prejudicial. The Secret Service's general protocols about relocation for safety, for instance, should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence). Similarly, operational specifics about Secret Service protective details are not relevant in this case. The number or type of assigned agents on a protective detail does not alter the probability that the Capitol and its grounds were restricted at the time, nor that the Vice President was temporarily visiting. None of the other elements to be proven or available defenses implicate further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and

6

waste of time. Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or biases of witnesses.[2] *See Easterday* Memorandum Opinion at 4 (ECF No. 53) ("Because the Government represents that the tactics and protocols at issue will be beyond the scope of direct examination, the Court will exclude such testimony — with the caveat that Defendant may cross-examine within the scope of direct testimony should the Government elicit these details there.") (citing *United States v. Bru*, 2023 WL 4174293, at \*2 (D.D.C. June 26, 2023) (granting identical motion).

### c. Motion in Limine to Preclude Entrapment, Public Authority, or Agent Provocateur Defenses

#### i. Defendant Johnson's Actions Were Not Authorized by the President

The Court should prohibit the defendant from making arguments, introducing irrelevant evidence, or suggesting that former President Trump or other officials gave the defendant permission to attack the U.S. Capitol in what are commonly known as "entrapment-by-estoppel"

---

[2] If the defense believes that it is necessary to present evidence or cross-examine witnesses about the exact locations of USCP cameras or USSS procedures, the United States requests that the Court conduct a hearing in camera to resolve the issue. Courts have found that in camera proceedings are appropriate in circumstances where security concerns like these are present. *See United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that in camera proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security"); *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) ("This Circuit, too, has repeatedly approved the use of in camera examinations as the means for resolving the conflict between a defendant's need for evidence and the government's claim of privilege based on the needs of public security."). At any such hearing, the defendant should be required to make a specific proffer of some relevant purpose that is not substantially outweighed by the prejudice that disclosure would inflict on the United States's security interests. *Cf. United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991) (explaining that a "proffer of great specificity" was necessary to support admission of testimony that could have proper or improper purposes).

or "public authority" defenses.

As courts in this district have explained, the entrapment-by-estoppel and public authority defenses are closely related and derive from a constitutional prohibition against "convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *United States v. Sheppard*, No. 21-cr-203, 2022 WL 17978837, at \*7 (D.D.C. Dec. 28, 2022) (J. Bates) (quoting *Cox v. Louisiana*, 379 U.S. 559, 571 (1965)). Both defenses are narrow ones, however, and a defendant may succeed on them only if he meets rigorous evidentiary requirements. *See United States v. Alvarado*, 808 F.3d 474, 484-85 (11th Cir. 2015) ("The public authority defense is narrowly defined, however, and a defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites."); *United States v. Baker*, 438 F.3d 749, 755 (7th Cir. 2006) ("The [entrapment-by-estoppel] defense is a narrow one."). In particular, to succeed on an entrapment-by-estoppel claim, a defendant must prove:

> (1) that a government agent actively misled him about the state of the law defining the offense;
>
> (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense;
>
> (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and
>
> (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (C.J. Howell) (quoting *Cox*, 906 F.3d at 1191). This district has articulated a similar four-part analysis for the public authority defense:

> [A]n individual (1) reasonably, on the basis of an objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant

legal field.

*Sheppard*, 2022 WL 17978837 at *8 (quoting *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976). Common between these standards is, among other things, that a government official must offer a "state" or "statement" of the law.

The defendant has not, and cannot, argue that, in urging his supporters towards the Capitol, then-President Trump made a "statement" of law. By now, several courts in this district have considered various defendants' arguments that the President's words immunized their actions on January 6. To the government's knowledge, all these arguments have failed. *See, e.g.*, *Sheppard*, 2022 WL 17978837 at *9 (prohibiting defendant from seeking discovery or presenting evidence at trial on entrapment-by-estoppel or public authority defenses); *United States v. Grider*, No. 21-cr-022, 2022 WL 3030974, at *4 (D.D.C. Aug. 1, 2022) (J. Kollar-Kotelly) (declining to instruct jury on defense of entrapment by estoppel); *Easterday* Memorandum Opinion at 5–6 (ECF No. 53) ("The Court . . . does not preclude Easterday from introducing evidence about Trump's statements if they bear on Defendant's state of mind that day. But . . . it will not permit a public-authority defense.").

Defendants' efforts to assert an entrapment-by-estoppel defense have uniformly failed, given that, as Judge Bates observed, the defense is available "only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." *Sheppard*, 2022 WL 17978837 at *9. The key challenge for the defendant is that, as this Court has observed, "President Trump neither stated nor implied that entering the restricted area of the Capitol grounds and the Capitol building or impeding the certification of the electoral vote was lawful." *Id.* Rather:

> [Trump's] speech simply suggests that it would be an act of "boldness" to "stop the steal." Thus, allowing [the defendant's] reliance on these words would be an instance of allowing "following orders, without more, [to] transform an illegal act into a legal one"—something the D.C. Circuit has unequivocally declined to do.

*Id.* (quoting *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990)); *see also Grider*, 2022 WL 3030974 at *2–3 (finding that then-President Trump did not "actively misle[a]d [the defendant] about the state of the law," because Trump did not make any statement about the law at all) (quoting *Chrestman*, 525 F.Supp.3d at 14).

Yet, even if then-President Trump had made a statement about the law, allowing those statements to immunize the defendant's conduct would raise serious constitutional concerns. As Judge Howell observed about another entrapment-by-estoppel defense by a similarly situated defendant, "No American President holds the power to sanction unlawful actions because this would make a farce of the rule of law." *Chrestman*, 525 F.Supp.3d at 32.  In other words, to allow an entrapment-by-estoppel or public authority defense based on the President's false statements of law would implicate both the Take Care clause and the presidential oath of office, and more fundamentally question the nature of the rule of law in America.

Finally, "entrapment by estoppel is a defense rather than an evidentiary objection and, accordingly, should have been raised prior to trial." *United States v. Colon Ledee*, 967 F. Supp. 2d 516, 520 (D.P.R. 2013). If no such defense is raised in pre-trial filings, as a threshold matter, the defendant should be precluded from raising such defenses at trial.

### ii. Defendant Johnson's Actions Were Not Authorized by Law Enforcement

In addition to prohibiting arguments that any officials or officers permitted the defendant to enter the Capitol grounds, the Court should bar the defendant from arguing that any act or omission law enforcement to act rendered the defendant's conduct legal. The same reasoning that applied in *Chrestman* again applies here. That is, like the President, a law enforcement officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her

purported inaction. *Chrestman*, 525 F.Supp.3d at 33. An officer cannot shield an individual from liability for an illegal act by failing to enforce the law, nor can an officer ratify unlawful conduct by failing to prevent it.

"Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct." *Williams*, No. 21-cr-377 at *3; s*ee also Garcia v. Does*, 779 F.3d 84, 95 (2d Cir. 2015) (en banc) (entrapment-by-estoppel defense rejected after defendants argued that their prosecuted conduct had been implicitly approved by the police but could not show that it was "affirmatively authorized" by the police). The same principles apply here. The defendant should be prohibited from arguing that his conduct was lawful because law enforcement officers allegedly failed to prevent it or respond directly to it when it occurred. The corollary is true as well. The defendant should be prohibited from arguing law enforcement officers took part in the riot.

While this Court has previously found that such a ruling may be premature, *see Easterday* Memorandum Opinion at 6 (ECF No. 53) (citing *United States v. Carpenter*, 2023 WL 1860978), Defendant Johnson has not notice this defense nor proffered any facts and circumstances that would allow this Court to hold a ruling under advisement. The government asks the Court to preclude any argument unless and until any evidence of the sort is presented.

### iii. This Court Should Preclude the Defendant from Arguing His Actions Were Caused By Agent Provocateurs

Defendants in other, unrelated January 6 cases have introduced arguments that the defendant's actions were encouraged by agents of the government. This Court did previously state, "the more prudent course is to rule on specific issues as they arise at trial." *Easterday* Memorandum Opinion at 8 (ECF No. 53). Again, absent a proffer of evidence, Defendant Johnson should be precluded from making any such arguments to the Court, whether during an

opening or closing arguments or on cross-examination. *Cf. Michelson v. United States*, 335 U.S.

469, 481 (1948) (approving of the trial court's "scrupulous" efforts to guard against the asking of

"a groundless question to waft an unwarranted innuendo into the jury box.").

### d.   Motion in Limine to Preclude an Improper First Amendment Defense

The Court should preclude the defendant from arguing or eliciting evidence that on January

6, 2021, he enjoyed a First Amendment right to protest inside the restricted area around the Capitol

or inside the Capitol building itself. This would be consistent with this Court's previous orders.

*See Easterday* Memorandum Opinion at 7 (ECF No. 53) ("Because the Capitol Police and Secret

Service's restricted perimeter was consistent with the First Amendment, Defendant may not argue

that he enjoyed a First Amendment right to protest in the building or protected grounds.").

At trial, the government will show that the Capitol grounds and building were restricted on

January 6 within the meaning of 18 U.S.C. § 1752(c)(1)(B).  There is no First Amendment right

to protest in a restricted area. The government can—and on January 6, did—restrict an area that is

a traditional public forum for legitimate government ends. Courts in this district have repeatedly

affirmed that the government may close a public forum in similar circumstances. *See, e.g.*,

*Mahoney v. United States Marshals Service*, 454 F. Supp. 2d 21, 32-33 (D.D.C. 2006) (U.S.

Marshals Service did not violate the First Amendment by restricting access to a sidewalk in front

of St. Matthew's Cathedral for Red Mass, even though the sidewalk was a traditional public

forum).

### e.   Motion in Limine to Preclude the Defendant from Encouraging Jury Nullification

The Court should prohibit the defendant from arguing or introducing evidence that

encourages jury nullification, whether during *voir dire* or at trial.  As the D.C. Circuit has made

clear,

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).  Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant").

The government has identified the following subject areas that are not relevant to the issues before the jury and that could serve as an improper invitation for the jury—or this Court—to nullify its fact-finding and conclusions under the law. The Court should preclude any reference to these issues, or similar arguments, either during *voir dire*, opening statement, questioning of witnesses, the defense case-in-chief, or closing.

### i. Selective Prosecution

The defendant may claim that he has been unfairly singled out for prosecution because of his political views. But a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Regardless of whether alleged discrimination based on political views is a proper basis for challenging the indictment—which the defendant has not claimed to date—it has no place in a trial. *See United States v. King*, No. 08-cr-002, 2009 WL 1045885, at *3 (D. Idaho Apr. 17, 2009) ("The Court will therefore exclude any evidence or argument as to selective prosecution at trial."); *United States v. Kott*, No. 3:07-cr-056, 2007 WL 2670028, at *1 (D. Alaska Sept. 10, 2007) (precluding the

defendant from educing evidence to support a selective prosecution claim at trial). Rather, such

an argument could serve as an improper invitation for the jury or Court to nullify its fact-finding

and conclusions under the law; the defendant should therefore be precluded from making it.

### ii. Statements Regarding the Alleged Offenses' Punishment or Collateral Consequences of Conviction

The defendant likely faces a substantial prison sentence if he is found guilty in this case,

and he should not be permitted to seek to arouse the Court or jury's sympathy by introducing any

evidence of or attempting to argue about the hardships of prison or the potential effect of

incarceration on his family or employment prospects.

It is settled law that the jury should not consider such penalties in reaching its verdict. *See,*

*e.g.*, *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (a defendant's possible sentence

"should never be considered by the jury in any way in arriving at an impartial verdict as to the

guilt or innocence of the accused."); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should

have been admonished that it "had no sentencing function and should reach its verdict without

regard to what sentence might be imposed"). Indeed, courts in this district often give a jury

instruction stating exactly that:

> The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

D.C. Redbook 2.505. Thus, the above-mentioned issues are irrelevant, and any reference to them

would invite jury nullification. *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974)

("evidence which has the effect of inspiring sympathy for the defendant or for the victim . . . is

prejudicial and inadmissible when otherwise irrelevant") (internal citation omitted); *United States*

*v. White*, 225 F. Supp. 514, 519 (D.D.C 1963) ("The proffered testimony (which was clearly

designed solely to arouse sympathy for defendant) was thus properly excluded."). As such, they should be excluded.

### f.   Motion in Limine to Preclude the Defendant from Introducing Evidence of His Own Good Character or Conduct

The Court should preclude any argument that the defendant's lack of additional criminal actions on January 6, 2021 or allegedly helpful acts negate the criminal conduct for which he is charged. *See United States v. Camejo*, 929 F.2d 610, 612-13 (11th Cir. 1991) (a witness's proffered testimony that a defendant declined to participate in a separate, contemporaneous narcotics conspiracy was an inadmissible "attempt to portray [the defendant] as a good character through the use of prior 'good acts'"). Indeed, such evidence would not be particularly probative of whether the defendant is guilty of the offenses with which he is charged; many Capitol Riot defendants acted both violently and helpfully towards law enforcement at different times on January 6, 2021. *See, e.g.*, Government Sentencing Submission, *United States v. Fairlamb*, No. 21-cr-120 (D.D.C. Nov. 3, 2021), ECF No. 50 at 14-19 (defendant who offered police officers water and offered to assist them in leaving the area subsequently shoved and punched another officer).

Evidence of past "good acts" by a defendant is generally not probative unless a defendant is alleged to have always or continuously committed bad acts or engaged in ceaseless criminal conduct. *United States v. Damti*, 109 Fed. Appx. 454, 455-56 (2nd Cir. 2004) (citations omitted). Ceaseless conduct occurs when it is alleged that all the defendant's actions were illegal. *Id.* When that is not alleged and the prosecution can point to specific criminal acts, then evidence of good acts is not probative of the issue of guilt at trial. *Id.* Using specific instances of good acts "to prove lack of intent . . . is not only disfavored, it is not permitted under Rule 405(b)." *United States v. Marrero*, 904 F.2d 251, 259–60 (5th Cir. 1990) (affirming decision to exclude evidence

that the defendant "provided more services to some clients than they were actually billed for and that sometimes she rendered services free of charge," which the defendant sought to introduce to show that she did not intend to improperly bill a government agency for medical services).

Even if probative, however, introducing evidence about the defendant's irrelevant conduct risks confusing the issues by inviting the jury or Court to weigh the defendant's culpability relative to other rioters, and ought to be excluded. *See United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001) ("Evidence that is admissible under Rule 404 may nonetheless be excluded under Rule 403 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'").  Any alleged specific good acts by the defendant are not connected to the issues of this case.  Introducing evidence of such acts carries an unnecessary risk of distracting the jury by allowing it to decide based, not on whether the evidence showed that the defendant committed the charged crimes, but instead on whether the defendant performed unrelated good deeds.

### g. Motion in Limine to Preclude Defendant from Comparing His Culpability Relative to Other Rioters

This Court may find that the Defendant's "conduct — good and bad — on the day in question is generally admissible." *Id.* However, even if such evidence is introduced, the Court should preclude any *argument* that the defendant's lack of additional criminal actions on January 6, 2021 or allegedly helpful acts negate the criminal conduct for which he is charged.

### h. Motion in Limine to Preclude Defendant's Introduction of His Own Out-of-Court Statements as Inadmissible Hearsay

A defendant's own out-of-court statements are hearsay that cannot be admitted proving the truth of any matter asserted.  Fed. R. Evid. 801, 802.  Although the United States may offer the defendant's statements as statements of a party opponent, Fed. R. Evid. 801(d)(2)(A), or other

nonhearsay, the defendant has no corresponding right to admit his own statements without subjecting himself to cross-examination.

### i. The Rule of Completeness Cannot Circumvent the Rule Against Hearsay

Nor does Federal Rule of Evidence 106, the "Rule of Completeness," provide an end-run around the prohibition against hearsay. That rule provides that, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 directs the Court to "permit such limited portions [of a statement] to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence." *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986). The rule does not "empower[] a court to admit unrelated hearsay." *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987). "[T]he provision of Rule 106 grounding admission on 'fairness' reasonably should be interpreted to incorporate the common-law requirements that the evidence be relevant, and be necessary to qualify or explain the already introduced evidence allegedly taken out of context . . . . In almost all cases we think Rule 106 will be invoked rarely and for a limited purpose." *Sutton*, 801 F.2d at 1369.

In this case, many of the defendant's statements to be offered by the United States were made in chat groups, or using social media accounts, that were active over extended periods of time. Rule 106 does not make all statements within these groups and accounts admissible over a hearsay objection, but only those narrow portions that are necessary to "correct a misleading impression." *Sutton*, 801 F.2d at 1368 (quoting Rule 106 advisory committee notes). By way of analogy, Courts of Appeals have rejected the notion that "all documents contained in agglomerated files must be admitted into evidence merely because they happen to be physically stored in the

same file." *Jamison v. Collins*, 291 F.3d 380, 387 (6th Cir. 2002) (quoting *United States v. Boylan*, 898 F.2d 230, 257 (1st Cir. 1990)). Accordingly, at trial the Court should reject any effort by the defendant to use the Rule of Completeness as a backdoor to admit otherwise inadmissible hearsay.

### ii. Law Enforcement Testimony Cannot Circumvent the Rule Against Hearsay

Another mechanism by which the United States anticipates that the defendant may attempt to introduce his own prior statements is through the testimony of law enforcement officers with whom the defendant had communications. The United States anticipates that the defendant may seek to call law enforcement officers or agents, at least in part, to elicit self-serving statements made by the defendant to law enforcement about his travels to Washington, D.C. Any such statements by the defendant, if offered for the truth of the matter asserted, would be inadmissible hearsay.

An equally defective mechanism by which the defendant might attempt to introduce his own prior statements would be to elicit lay opinion testimony from the officers or agents. As an initial matter, such testimony would likely be irrelevant and inadmissible on that basis. Additionally, if such opinions are predicated on self-serving statements by the defendant, the opinion testimony is likewise inadmissible as a vehicle to admit the defendant's hearsay. The Federal Rules of Evidence allow only expert witnesses to offer opinions based on otherwise-inadmissible evidence, Fed. R. Evid. 703, and even in that context, expert opinion testimony cannot be a backdoor for hearsay. *See Gilmore v. Palestinian Interim Self-Government Authority*, 843 F.3d 958, 972 (D.C. Cir. 2016) ("The expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials. Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that allows the [proponent] to circumvent the rules prohibiting hearsay") (internal quotation marks

and alterations omitted) (quoting *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *DL v. D.C.*, 109 F. Supp. 3d 12, 30 (D.D.C. 2015) ("An expert is entitled to rely on inadmissible evidence in forming his or her opinion, though the expert 'must form his or her own opinions by applying his or her extensive experience and a reliable methodology to the inadmissible materials,' rather than simply 'transmit' the hearsay to the jury." (alterations omitted) (quoting *Mejia*, 545 F.3d at 197)).  At trial, the Court should reject any effort by the defendant to admit otherwise inadmissible hearsay indirectly through a law enforcement officer or other percipient witness.

## III.   CONCLUSION

For the reasons described above, the United States respectfully requests that this Court grant the government's omnibus motion *in limine* in its entirety.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Pavan S. Krishnamurthy*
PAVAN S. KRISHNAMURTHY
Assistant United States Attorney
D.C. Bar No. 252831
601 D Street NW
Washington, DC 20001
(202) 252-7862
pavan.krishnamurthy@usdoj.gov

*/s/ Rebekah E. Lederer*
REBEKAH LEDERER
Assistant United States Attorney
Pennsylvania Bar No. 320922
601 D St., NW
Washington, D.C. 20001
(202) 252-7012
rebekah.lederer@usdoj.gov