UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No.: 22-CR-414 (JEB) |
| v. : | |
| : | |
| ANDREW JOHNSON, : | |
| : | |
| Defendant. : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S
### MOTION TO WITHDRAW GUILTY PLEA

The United States of America, by and through its undersigned attorneys, requests this Court deny Defendant Johnson's motion to withdraw his guilty plea (the "Motion to Withdraw Guilty Plea"). Defendant Johnson has no valid challenge to the plea colloquy nor has he offered any plausible claim of actual innocence. For the reasons stated in this opposition motion, the Motion to Withdraw Guilty Plea should be denied.

### BACKGROUUND

On December 28, 2022, the government filed an Information, and on January 4, 2023, this Court arraigned Defendant Johnson on four counts (18 U.S.C. §1752(a)(1), 18 U.S.C. §1752(a)(2), 40 U.S.C. §5104(e)(2)(D), and 40 U.S.C. §5104(e)(2)(G)).

The government initially produced Defendant Johnson's discovery to counsel via USAfx, a file-sharing platform, in June and August of 2023. In March 2024, following the request of Defendant Johnson's new counsel, the government reproduced discovery via USAfx.

On April 2, 2024, following a *Faretta* hearing, Defendant Johnson was permitted to proceed *pro se* with his counsel remaining on as standby counsel. *See* Docket Entry Apr. 2, 2024. The government provided Defendant Johnson with trial exhibits but did not give Defendant

1

Johnson access to the Sensitive and Highly Sensitive discovery material or trial exhibits. Instead, Defendant Johnson was directed to refer to standby counsel for such material.

On April 15, 2024, immediately prior to trial, Defendant Johnson pleaded guilty to all four counts. *See* Docket Entry Apr. 15, 2024. During the plea colloquy, this Court followed Federal Rule of Criminal Procedure 11 procedures and Defendant Johnson admitted under oath to the elements of each offense. Moreover, this Court specifically asked whether Defendant Johnson had knowledge as to the presence of a Secret Service protectee in the U.S. Capitol Building, to which Defendant Johnson stated yes.[1]

In July 2024, following the request of Defendant Johnson's standby counsel, the government again reproduced discovery via USAfx. On July 2, 2024, the government informed Defendant Johnson he could review Sensitive and Highly Sensitive material virtually with standby counsel due to the geographic separation between him and his standby counsel. Defendant Johnson was instructed that he could not record the meeting and was reminded that standby counsel would review the rules governing the Sensitive and Highly Sensitive material.

On July 8, 12, and 16, 2024, Defendant Johnson repeatedly inquired about the anonymous source of Image 8 contained within his Statement of Facts. *See* ECF No. 1-A. Defendant Johnson suggested the anonymous photo was taken by Ryan Nichols, another January 6, 2021 defendant, who he falsely described as a government "asset" or "CI," confidential informant. On July 16, 2024, following a review of discovery relating to Nichols, the government informed Defendant Johnson that it could only confirm that the photograph came from an anonymous source. The government further informed that Highly Sensitive discovery material documented said

---

[1] The government has ordered transcripts to the April 15, 2024 plea hearing on an expedited basis. Where the government makes good faith references to the events of the plea hearing, it does so based on government counsels' recollections.

photograph and that Defendant Johnson could review those Highly Sensitive materials with his standby counsel.

On May 2, 2024, Judge Lamberth sentenced Nichols to 63 months of incarceration. *United States v. Ryan Nichols*, 21-CR-117-RCL, Minute Entry May 2, 2024.

On July 31, 2024, this Court granted Defendant Johnson's motion for leave to file under seal the Motion to Withdraw Guilty Plea.

On August 2, 2024, the morning of Defendant Johnson's previously continued sentencing hearing, standby counsel requested to convert the sentencing hearing into a status hearing via email. This Court granted the request based on representations that Defendant Johnson had been in an accident. However, Defendant Johnson failed to appear to the status hearing despite being able to post on social media earlier that day. *See, e.g.*, Image 1 (below).



This Court set another status conference for August 9, 2024 to resolve the United States' Motion to Show Cause for Violations of the Protective Order and Release Conditions, Revoke

3

Release Pending Sentencing, and Supplement Sentencing Memorandum, filed under seal on July 29, 2024 (the "Show Cause and Revocation Motion") and the Motion to Withdraw Guilty Plea.

## LAW

"After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea," he should not be allowed "to withdraw his guilty plea simply on a lark." *United States v. Hyde*, 520 U.S. 670, 676 (1997); *see also United States v. Robinson*, 587 F.3d 1122, 1133 (D.C. Cir. 2009). Thus, a defendant does not have an absolute right to withdraw a guilty plea. *See United States v. Holland*, 117 F.3d 589, 593 (D.C. Cir. 1997). If withdrawal were automatic in every case where the defendant merely wishes "to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim." *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975).

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw his guilty plea before a sentence is imposed if he shows a "fair and just reason" for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2)(B); *Hyde*, 520 U.S. at 671; *United States v. Jones*, 472 F.3d 905, 907 (D.C. Cir. 2007). "Although presentence withdrawal motions should be 'liberally granted,' they are 'not granted as a matter of right.'" *United States v. Ahn,* 231 F.3d 26, 30 (D.C. Cir. 2000) (quoting *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993)); *United States v. Loughery*, 908 F.2d 1014, 1017 (D.C. Cir. 1990). The decision to grant a withdrawal is within the court's discretion. *See United States v. Tolson*, 372 F.Supp.2d 1, 8 (D.D.C. 2005), *aff'd*, 264 Fed. App'x 2 (D.C. Cir. 2008).

Typically, courts look at several factors in deciding whether to grant a motion to withdraw a plea, including: (1) whether the guilty plea was somehow tainted, (2) whether the defendant has asserted a viable claim of innocence, and (3) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case. *See United States v. Robinson*, 587 F.3d 1122, 1127 (D.C. Cir. 2009); *United States v. West*, 392 F.3d 450, 455 (D.C. Cir. 2004). The taint factor is the "most important." *Robinson*, 587 F.3d at 1127 (D.C. Cir. 2009) (citing *Ford*, 993 F.2d at 251). The "highly questionable circumstances" that could lead to taint, as outlined in *Barker*, 514 F.2d at 221, include situations where a defendant misunderstood the crimes charged, or did not have effective assistance of counsel at the time of the plea, or evinced strong evidence of mental illness at the time of the plea, or entered a plea hastily at arraignment without the benefit of counsel. *Id.*

Whether the movant has asserted his legal innocence is also an important factor. *Barker*, 514 F.2d at 220. But the defendant "must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent." *United States v. Cray*, 47 F.3d 1203, 1209 (D.C. Cir. 1995).

**ARGUMENT**

This Court should deny the Motion to Withdraw Guilty Plea because (1) the guilty plea is not tainted, and Defendant Johnson has not asserted a viable claim of innocence, and (2) the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case.

**I.    There Is Neither Taint with the Plea Nor a Viable Claim of Innocence**

Defendant Johnson states that this plea was tainted and he has a viable claim of innocence, because (a) he allegedly did not receive sufficient opportunity to review discovery and had

5

ineffective counsel, despite his *pro se* status and multiple reproductions of discovery, (b) he erroneously concludes his arrest was the "fruit of the poisonous tree" because the source of one piece of evidence was from an anonymous photographer, (c) he wrongly believes the source of that one piece of evidence to be an agent of the government and that this somehow constitutes a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and (d) he asserts that some potential appellate rulings may affect elements of the offenses for which he has pleaded guilty.

### a. Defendant Johnson was appropriately provided discovery and had effective counsel

As a threshold matter, this Court conducted a *Faretta* colloquy and determined that Defendant Johnson was competent to represent himself. His decision to proceed *pro se* prior to trial has consequently limited any colorable ineffective assistance of counsel claim as Defendant Johnson himself is his counsel. And the government does not accept Defendant Johnson's after-the-fact assertion that he pled guilty because he was "overwhelmed and unprepared" and hoped to avoid a "trial tax." Mot., at 3. While the government is not prepared to accept such claims without evidence, the Court need not grant his sought-after relief simply because he now appears to be second guessing his decisions. In light of Defendant Johnson's conduct and past statements, this Court can and should give little to no weight to his Monday morning quarterbacking. Indeed, this Court went to great pains to avoid this situation by confirming the that the government had fulfilled its discovery obligations at various status hearings and confirming that Defendant Johnson was pleading guilty based on his own volition.

In any case, on the merits, Defendant Johnson's legal claim is unavailing. "A defendant asserting ineffective assistance of counsel must demonstrate two things: '(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.'" *United States v. Green-Remache*, 97 F.4th 30, 33 (D.C. Cir. 2024) (citing *In re Sealed Case*, 901 F.3d

397, 404, 438 U.S. App. D.C. 213 (D.C. Cir. 2018) (quotation omitted)). On the first prong, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With regard to the second prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Defendant Johnson's prior counsel, standby counsel, and he himself, once permitted to proceed *pro se*, was provided discovery on multiple occasions. Even if Defendant Johnson's counsel was required to review discovery remotely, that in no way shows deficiency in contravention of the Sixth Amendment. Indeed, it appears that Defendant Johnson's primary complaint is that he was not directly provided Highly Sensitive material. Of course, the government proceeded in this fashion given this Court's Protective Order and the likelihood that Defendant Johnson would violate the order—a risk that bore unfortunate fruit, now subject to the Show Cause and Revocation Motion.

Furthermore, any deficiency was not prejudicial to Defendant Johnson's defense. Defendant Johnson has repeatedly attempted to introduce false information into this proceeding relating to government agent provocateurs. This improper entrapment-by-estoppel defense, for which his previous counsel properly declined to advance, cannot show that the result of the proceeding, for which he pleaded guilty, would have been different. To the government's knowledge, all similar January 6, 2021 entrapment-by-estoppel defenses have failed. *See, e.g.*, *Sheppard*, 2022 WL 17978837 at *9 (prohibiting defendant from seeking discovery or presenting evidence at trial on entrapment-by-estoppel defense); *United States v. Grider*, No. 21-cr-022, 2022

7

WL 3030974, at *4 (D.D.C. Aug. 1, 2022) (J. Kollar-Kotelly) (declining to instruct jury on defense of entrapment by estoppel).

### b. The government's inclusion of one image from an anonymous source was permissibly used in the criminal complaint

Defendant Johnson erroneously concludes his arrest was the "fruit of the poisonous tree" because the source of one image in his criminal complaint was from an anonymous photographer. Of course, the "fruit of the poisonous tree" argument is inapplicable here because the government did not conduct an unlawful seizure to acquire the image in question. *See United States v. Holmes*, 505 F.3d 1288, 1293 (2007). In any case, the government has presented to this Court various pieces of independent evidence that show that Defendant Johnson entered room ST-2M. On January 6, 2021, at approximately 4:15 p.m., Defendant Johnson entered the U.S. Capitol Building through the window of room ST-2M that had been smashed out by other rioters. *See* ECF No. 51, Exhibit 6 (still below).

 

While in room ST-2M, Johnson waved to fellow rioters on the Lower West Terrace, in a manner that appeared to encourage more breaches of the U.S. Capitol Building. *See id.*, Exhibit 8 (still below).



Even if this Court believes the baseless theory that he was unwittingly convinced to breach the U.S. Capitol by a government agent provocateur, Defendant Johnson pleaded guilty prior to trial and the government relied on independent evidence to show his disorderly conduct in room ST-2M.

## c. Defendant Johnson's *Brady* violation allegation is unsupported

Defendant Johnson presents a cavalier allegation of a *Brady* violation. It too is unpersuasive. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. *Id*. at 87. Courts will not infer the existence of *Brady* material based upon speculation alone. *United States v. Williams-Davis*, 90 F.3d 490, 514 (D.C. Cir. 1996). Finally, the requirements of *Brady* do not extend to information the government does not possess or is not aware of. *United States v. Flynn*, 411 F.Supp.3d 15, 32 (D.D.C. 2019) (citing *United States v. Pollock*, 534 F.2d 964 (D.C. Cir. 1976) and *United States v. Turner*, 104 F.3d 217, 220 (8th Cir. 1997)); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (the *Brady* obligation extends only to material evidence that is known to the prosecutor).

9

Defendant Johnson's core claim is that the government has evidence that one image included in his statement of facts was taken by a government agent provocateur he uncovered years after engaging in criminal misconduct on January 6, 2021. Not only is entrapment-by-estoppel an improper defense, rendering any such evidence immaterial to either guilt or punishment, but this false information cannot form the basis of a *Brady* violation because it is speculative at best, fraudulent at worst.

### d. Potential adverse appellate decisions against the government do not taint the plea or sustain a viable claim of innocence.

Defendant Johnson points to two appellate proceedings, *United States v. Griffin*, No. 22-3042, and *United States. v. Alford*, 23-7158, to suggest that his plea was tainted and that he could sustain a viable claim of innocence. By pleading guilty, however, he specifically admitted his conduct satisfied the statutory elements of the crimes. Moreover, this Court specifically asked Defendant Johnson whether he had knowledge a Secret Service protectee in the U.S. Capitol Building on January 6, 2021. Defendant Johnson answered in the affirmative, rendering any potential adverse decision against the government in *Griffin* irrelevant to his case.

Even assuming a future and speculative change in the law, a "guilty plea does not automatically become tainted if a change in the law alters a variable that the defendant considered when he decided to plead guilty." *United States v. Robinson,* 587 F.3d 1122, 1129 (D.C. Cir. 2009) (post-guilty plea reduction in Guidelines range for crack cocaine offenses); *United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005) ("[T]he possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea"). Defendant Johnson seeks to evade these principles by now claiming ignorance as to two cases which may or may not affect some of the charges he has pleaded guilty to, and may or may not lead to some future, unspecified relief. But his decision to forego any legal challenge and instead plead guilty does not become infirm

simply because he may regret the decision later. Consequently, there is neither taint with the plea nor "objectively reasonable argument that he is innocent," *see Cray*, 47 F.3d at 1209, such that Defendant Johnson should be permitted to withdraw his plea.

### II. The Length of Time Since the Plea Proves that the Allegations in the Motion to Withdraw Stem from Other Concerns.

Over four months have passed since Defendant Johnson entered his guilty plea in April 2024. During this time, Defendant Johnson has repeatedly violated his release conditions over a dozen times including egregiously violating this Court's Protective Order by unlawfully retaining and disseminating Highly Sensitive discovery materials and using such information to promote false theories and to endanger others. *See* Show Cause and Revocation Motion, Factual Background, Sections I & II. Consequently, the timing of the Motion to Withdraw Guilty Plea should give this Court pause. Generally, a court "looks askance at assertions of innocence that come long after a guilty plea has been entered, absent some tenable explanation for the delay." *Ford,* 993 F.2d at 254 (citing *United States v. McKoy*, 645 F.2d 1037, 1038 (D.C. Cir. 1981) and *Barker*, 514 F.2d at 221). His unreliable allegations of taint and coercion, however meritless, should have been raised immediately, not months after the plea colloquy, two days after the government filed its Show Cause and Revocation Motion, and two days before Defendant Johnson was scheduled to be sentenced. This hail mary pass should be reviewed skeptically under the circumstances.

### CONCLUSION

Accordingly, for the foregoing reasons, the government respectfully requests that the Court deny Defendant Johnson's Motion to Withdraw Guilty Plea.

    Respectfully submitted,

    MATTHEW M. GRAVES
    United States Attorney

11

D.C. Bar No. 481052

*/s/ Pavan S. Krishnamurthy*
PAVAN S. KRISHNAMURTHY
Assistant United States Attorney
D.C. Bar No. 252831
601 D Street NW
Washington, DC 20001
(202) 252-7862
pavan.krishnamurthy@usdoj.gov

*/s/ Rebekah E. Lederer*
REBEKAH LEDERER
Assistant United States Attorney
Pennsylvania Bar No. 320922
601 D St., NW
Washington, D.C. 20001
(202) 252-7012
rebekah.lederer@usdoj.gov